## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

VARISSA P. DEHOYOS,

       Plaintiff,

v.                                                          Civ. No. 12-00173 LH/CG

BLOOMFIELD PUBLIC SCHOOL
DISTRICT, SUPERINTENDENT JOE
RASOR, and PRINCIPAL OF BLOOMFIELD
HIGH SCHOOL CODY DIEHL,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Bloomfield Public School

District ("District"), Superintendent Joe Rasor, and Principal of Bloomfield High School Cody

Diehl's (collectively, "Defendants") Motion for Summary Judgment on Counts I, III, and VI[1] of

Plaintiff's First Amended Complaint [Doc. 43], Plaintiff Varissa P. DeHoyos's Motion for

Summary Judgment on Counts I, III and IV of Plaintiff's First Amended Complaint [Doc. 60], and

Defendants' Motion in Limine to Exclude Certain Testimony by Witnesses Proffered by Plaintiff

[Doc. 42].   The Court, having considered the motions, briefs, and relevant law, and being

otherwise fully informed, finds that Defendants' Motion for Summary Judgment is well taken and

will be granted, Plaintiff's Motion for Summary Judgment is not well taken and will be denied, and

Defendants' Motion in Limine is moot and will be denied as moot.

---

[1]   The reference to Count "VI" appears to be a typographical error.   Plaintiff's Amended
Complaint contains four—and not six—counts.   Thus, the Court assumes that Defendants
intended to reference Count "IV" and not "VI."

## BACKGROUND[2]

The Amended Complaint alleges that Defendants discriminated against Plaintiff in her employment as a high school teacher based upon her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended in 1972, retaliated against Plaintiff in violation of Title VII, and violated Plaintiff's due process rights under the Fifth Amendment of the United States Constitution.   Plaintiff's claims arise out of a written reprimand she received for comments she made to a student on the social networking site Facebook.

Defendant Diehl, Principal of Bloomfield High School, reprimanded Plaintiff, a teacher at Bloomfield, for referring to her seventh period students in an April 12, 2011, Facebook posting as "lame," "disrespectful," "lazy," and "subhuman," for implying that she hates her students, and for encouraging a student to disrespect a parent of one of the students in her class.   Specifically, in response to a student complaining about her peers, Plaintiff wrote, "They are LAME![]."   When the student responded by stating, "I strait [sic] up hate them," Plaintiff wrote, "Trust me I'm with you there.[]   Disrespectful and lazy."   When the student replied, "there [sic] horrible," and stated, "the second you walked out of the room they started talking," Plaintiff responded, "I know!!!!! They are subhuman…lol."   Furthermore, a parent of one of the students in Plaintiff's seventh period class commented that he did not "appreciate" Plaintiff "talk[ing] about students that way," and that he believed "talk[ing] about students to other students . . . is why some of them think they can bully others because the teacher agrees with them."   When the student with whom Plaintiff was having the conversation told the parent to "mind [his] own business," Plaintiff encouraged the student by writing "Amen sister …..lol."

Plaintiff contends that she was "trying to use humor to diffuse the situation," that the "lol"

---

[2]   Except where otherwise noted, the following facts are undisputed.

signified that Plaintiff was joking, that she "had no intention to harm students in any way," and that "[d]efense [counsel] cannot speculate as to what Plaintiff meant by the comment 'Amen sister.'" At the time Plaintiff made these comments, Plaintiff was aware that other students from Bloomfield High School readily could view her Facebook conversation.   Plaintiff made her comments through her personal Facebook page after school hours.

Defendants maintain that they received a complaint about Plaintiff's Facebook conversation.   Although Plaintiff requested that Defendants release the name of the person bringing the complaint, Defendants declined to disclose that person's identity.   Plaintiff suggests that no complaint was made, but points to no evidence to support this claim.   Defendants placed Plaintiff on paid administrative leave pending the outcome of their investigation into Plaintiff's Facebook comments, and on April 21, 2011, Defendant Diehl issued a written reprimand to Plaintiff, which became part of Plaintiff's permanent personnel file.

In his written reprimand, Defendant Diehl indicated that Plaintiff's Facebook comments violated two of the District's policies enacted by the school board ("Board Policies")—namely, Board Policies G-0650 and G-0850.   Defendant Diehl also indicated, "I expect you to do the following:   treat all students with respect and dignity, treat parents and members of the community with respect and dignity, represent the district in a manner that models professionalism, adhere to the code of conduct expected of all district employees, [and] adhere to the statement of ethics for school employees."   Defendant Diehl further warned Plaintiff to "be aware that any and all retaliation will not be tolerated."   In addition, Defendant Diehl provided, "If you fail to follow directives provided to you, you will be considered insubordinate, and you will be subject to additional discipline, including but not limited to, the discharge or termination of your employment with the School District."   Plaintiff returned to work on April 21, 2011, in her

3

regular position and received no other discipline with respect to her Facebook comments or her April 21, 2011, written reprimand.   Plaintiff's employment contract was renewed for the 2012-2013 school year.

Board Policy G-0650 states that staff must "deal justly and considerately with each student."   Board Policy G-0850 provides that "[e]mployees are expected to exercise general supervision over the conduct of students, not only while in the schoolroom, but also before and after school and during recess," that "[a]t all times teachers . . . will accord students the dignity and respect that they deserve, and avoid embarrassing any student unnecessarily," and that "[a]ll personnel . . . are expected to relate to students of the District in a manner that maintains social and moral patterns of behavior consistent with community standards and acceptable professional conduct."   Board Policy G-0850 further provides that "relationships between staff members and students that include 'dating,' 'courtship,' or 'romantic involvement' are prohibited."   The District has no policy regulating social networking.

At the time Plaintiff made her Facebook comments, the Board Policies were freely accessible on the District's website and have been available on that website since April 8, 2008. Although Defendant Superintendent Rasor attests in his affidavit that the District informs new employees of the Board Policies and their availability on the District's website at the time of the new employee orientation, Plaintiff maintains that she was never informed of the policies because she was hired in January 2008, prior to the date the policies were available on the District's website, and because she did not attend a new employee orientation.   Plaintiff further contends that she was not made aware of the policies until after she was suspended.

Plaintiff presents evidence that the District failed to discipline other male and Caucasian similarly-situated employee-teachers who violated the same Board Policies that Plaintiff was

4

reprimanded for violating.[3]   For example, Plaintiff states that Defendant Diehl was aware that

Devon Manning, a Caucasian male, was dating a student in violation of Board Policy G-0850, and

that Mr. Manning was not punished.   Plaintiff testified at her deposition that she knows Mr.

Manning was not placed on administrative leave because she never witnessed him miss any

school.   Plaintiff further contends that guidance counselor and coach Bruce Hatch, also a

Caucasian male, physically assaulted a student, but that Mr. Hatch was not placed on

administrative leave pending investigation of the incident.   In addition, a Caucasian male teacher,

Jeff Rabuck, who received a complaint from a parent for telling a student, "I hope you burn in

hell," was not placed on administrative leave and received no punishment.   Plaintiff further states

that Caucasian female teachers Suzanne D'Avalon and Ruth Babcock had parent complaints, but

that they did not receive any written reprimand or discipline.

        In her affidavit, Human Resources Director Debbie Serrano attests that employee

information that the District provides to a potential employer does not include materials in the

employee's personnel file.   Ms. Serrano further attests that if an employee has a written

reprimand in her file, that information is "never" shared with the potential employer, even if it is

specifically requested.   Rather, the only information the District provides is regarding "the

employee's qualities and traits, which includes teacher evaluations."   Ms. Serrano attests that

Plaintiff has good evaluations and a good rapport with the children and that "[t]his is the extent of

the information that would be shared about [Plaintiff] if a prospective employer contacted the

---

[3]   Defendants make several objections on the ground of hearsay to Plaintiff's evidence involving
similarly-situated employees.   Defendants' hearsay objections, however, are moot.   Plaintiff
offers evidence of similarly-situated employees to establish pretext in support of her Title VII
discrimination claims.   However, as described herein, the Court has granted Defendants' Motion
for Summary Judgment on Plaintiff's Title VII discrimination claims on the ground that Plaintiff
has not stated a prima facie case.   Thus, the Court does not reach the question of pretext and
therefore need not rule upon Defendants' hearsay objections.   *See infra* § I.A.

District for employment information.

To counter the Serrano affidavit, Plaintiff points to Board Policy G-1790, which provides "that under current New Mexico law, an employer and individual employees may be held liable for having provided incomplete or misleading employment references or recommendations in regard to the employer's current or former employees under certain circumstances."   The policy further provides that "the Superintendent shall ensure that the recommendation fairly reflects all relevant and reliable information bearing upon the former employee's competency, turpitude, and proper performance of duties."

In addition, Plaintiff points out that the next closest school district in which Plaintiff would seek employment is the Farmington Public School District.   Plaintiff represents that Defendant Diehl's wife is an instructional leader for Farmington School District and that she has knowledge of the facts surrounding Plaintiff's written reprimand.

In November 2011, Plaintiff chose to remove her son from Blanco Elementary School because she believed the school's requirement that all sixth grade students complete a summer homework packet or receive a failing grade violated her son's rights.   More specifically, Plaintiff believed that the homework assignment violated her son's individualized education plan (IEP) for gifted and talented children because he did not need extended services and his IEP did not provide for any remediation.   The school administrators advised Plaintiff that if she did not agree with the school's policy regarding summer homework, she could transfer her son to another school.   In November 2011, Plaintiff voluntarily chose to transfer her son to another school in the District.

Although Plaintiff removed her son from Blanco Elementary School, Plaintiff's son thereafter competed with the Blanco gifted students in an academic bowl that took place on December 1, 2011.   Thereafter, Plaintiff's son was not allowed to participate on the Blanco team

6

during a subsequent academic bowl held on March 10, 2012.   Defendant Rasor attests in his affidavit that he was not involved in the decision to prohibit Plaintiff's son from participating on the Blanco team.   Defendant Rasor, however, sent an e-mail to Plaintiff dated February 10, 2012, which provides evidence to the contrary.   Specifically, in this e-mail Defendant Rasor indicated, "After thinking about your request and reviewing the information that was supplied to me, I feel that the obligation to provide services to your child at Blanco was terminated when you removed him from Blanco.   Therefore, I am denying your request for him to attend as a student competitor as a Blanco student."

Plaintiff has represented that Defendant Rasor's denial caused her son to suffer embarrassment and humiliation, caused his relationships with his teammates to suffer, and caused his education to be negatively impacted.   Plaintiff's son currently attends Mesa Alta Junior High School and competes on that school's academic competition team.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) on June 15, 2011.   Plaintiff filed her Complaint in this case on December 27, 2011.

On November 5, 2012, Defendant Diehl issued a "letter of expectation" to Plaintiff, which indicated that he was issuing the letter "as a constructive means to clarify expectations" because Plaintiff failed to attend meetings on five occasions.   Defendant Diehl expressly states that the letter is not discipline, but that if Plaintiff continues to miss meetings, she "may be subject to discipline."

## **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).   The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc*., 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then

8

a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.   *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

Because Plaintiff proceeds pro se, the court construes her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers.   *See McBride v. Deer,* 240 F.3d 1287, 1290 (10th Cir. 2001).   A plaintiff's pro se status, however, does not excuse her from the burden of coming forward with some "specific factual support," other than conclusory allegations, to support her claims.   *See Douglass v. Gen. Motors Corp.*, 368 F. Supp. 2d 1220, 1228 (D. Kan. 2005) (citation omitted), *aff'd*, Nos. 05-3178, 05-3184, 2006 WL 1495009 (10th Cir. June 1, 2006); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   While a district court may make some allowances if a pro se plaintiff fails to cite proper legal authority, confuses various legal theories, uses poor syntax and sentence construction, and is unfamiliar with pleading requirements, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."   *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## DISCUSSION

I.   Cross-Motions for Summary Judgment

The parties have filed cross-motions for summary judgment on Plaintiff's Title VII discrimination claims based upon race and sex, Plaintiff's Title VII retaliation claim, and Plaintiff's Fifth Amendment due process claim.   The Court will address the merits of the motions with respect to each of these claims in turn.

A.   Title VII Race and Sex Discrimination Claims

Title VII of the Civil Rights Act requires employers to make personnel decisions without discriminating against employees based on their race, color, religion, sex, or national origin.

*See* 42 U.S.C. § 2000e-2; *see also Martinez v. Barnhart*, No. 05-4170, 2006 WL 1076126, *2 (10th Cir. Apr. 25, 2006).   To prevail under Title VII, a plaintiff may show intentional discrimination through indirect evidence using the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).[4]

To survive summary judgment under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination by showing that (1) she is a member of a protected class, (2) an adverse employment action occurred, and (3) similarly-situated employees not of Plaintiff's race or sex were treated differently.   *See Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).   If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's termination.  *See Orr*, 417 F.3d at 1149.   If the defendant meets its burden of production by offering a legitimate rationale in support of its employment decision, the burden shifts back again to the plaintiff to show there is a genuine issue of material fact as to whether the proffered reason is pretextual.  *See id.*

Defendants argue that they are entitled to summary judgment in their favor on Plaintiff's discrimination claims because Plaintiff cannot establish that an adverse employment action occurred and because Defendants have articulated a legitimate, non-discriminatory reason for

---

[4]   A plaintiff also may establish intentional discrimination using direct evidence.  *See Orr*, 417 F.3d at 1149.   Although Plaintiff represents that because "there is direct evidence of discrimination under Title VII there is no need for the *McDonnell Douglas* burden-shifting framework," Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. [Doc. 52], p. 14, Plaintiff fails to point to any evidence or provide any argument supporting this contention.   Accordingly, the Court considers only whether Plaintiff has satisfied her burden of showing discrimination under the *McDonnell Douglas* framework.   *See* D.N.M.LR-Civ. 7.1(a) ("A motion must be in writing and state with particularity the grounds and the relief sought."); *id.*, Rule 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced.").

reprimanding Plaintiff.   Plaintiff maintains that she is entitled to summary judgment in her favor because the written reprimand in fact constituted an adverse employment action and because Defendants' reason for her reprimand was a pretext for discrimination.

With respect to the question of Plaintiff's prima facie case, Defendants contend that Plaintiff cannot establish the second element:   namely, that an adverse employment action occurred.   *Cf. Trujillo*, 157 F.3d at 1215.   The Tenth Circuit liberally defines "adverse employment action," and does not limit such actions to monetary losses.   *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996)).   Instead, the Tenth Circuit "takes a case-by-case approach, examining the unique factors relevant to the situation at hand."   *Id.* (internal quotations omitted) (citing *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998)).   To be actionable, the alleged adverse employment action must be more than "a mere inconvenience or an alteration of job responsibilities."   *Id.* (citations omitted).

In considering whether a written warning constitutes an adverse employment action, the Tenth Circuit has held that the warning must effect a significant change in the plaintiff's employment status, such as a demotion, failure to promote, change in responsibilities or benefits, or an alteration in pay.   *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006) ("A written warning *may* be an adverse employment action only if it effects a significant change in the plaintiff's employment status."), *cert. denied*, 549 U.S. 1252 (2007).   Moreover, the action must be "materially adverse" to the employee's job status.   *See Sanchez*, 164 F.3d at 533.   Defendants maintain that because Plaintiff was not demoted, her responsibilities were not significantly altered, her pay was not changed, and her contract was renewed the following year, no adverse

11

employment action occurred.

According to Plaintiff, however, her April 21, 2011, written reprimand constitutes an adverse employment action because the reprimand falls within a model of progressive discipline under which tenured employees can be terminated after a pattern of disciplinary action has been established.   Plaintiff points out that the written reprimand itself indicates that should Plaintiff fail to follow the directives provided in the reprimand, she will be subject to additional discipline including but not limited to termination of her employment.   Plaintiff further presents evidence that Defendants issued a "letter of expectation" to her on November 5, 2012, because Plaintiff failed to attend meetings on five occasions.   This second letter also indicates that if Plaintiff continues to miss meetings, she may be subject to discipline.[5]

The Tenth Circuit has held that warning letters and reprimands can constitute adverse employment actions.   *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998); *see also Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).   "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities."   *See id*. (citing *Roberts*, 149 F.3d at 1104); *accord Tapia v. City of Albuquerque*, No. 05-2028, 2006 WL 308267, *4 (10th Cir. Feb. 10, 2006).

Two Tenth Circuit cases are instructive in deciding whether Plaintiff's April 2011 written reprimand constitutes an adverse employment action.   In *Rennard v. Woodworker's Supply, Inc.*,

---

[5]   Plaintiff filed a complaint with the EEOC alleging retaliation with respect to the November 5, 2012, letter of expectation.   Plaintiff does not argue that a retaliation claim involving the November 2012 letter is before the Court.   In any event, the record does not indicate that the EEOC issued a right to sue letter, which precludes the Court from considering a retaliation claim based upon this action.

the Tenth Circuit held that the written reprimand at issue did not constitute an adverse employment action because the plaintiff failed to make any showing that the reprimand had an immediate or practical adverse effect on her job status.   *See* No. 03-8031, 2004 WL 1260309, *10 (10th Cir. June 9, 2004).   The *Rennard* court reasoned that although the written reprimand constituted the first step in the employer's progressive disciplinary process and the reprimand expressly stated that the plaintiff could be suspended or terminated if she continued to engage in the complained-of behavior, the employer did not take any other action against the plaintiff in connection with the reprimand.   *See id*.   The *Rennard* court therefore concluded that there was insufficient evidence in the record to establish that the written reprimand constituted an adverse employment action.   *See id.*

Likewise, in *Tapia v. City of Albuquerque,* the Tenth Circuit concluded that a letter of instruction the plaintiff received did not constitute an adverse employment action.   *See* 2006 WL 308267, at *4.   The *Tapia* court held that the letter was not disciplinary because the plaintiff continued to work for the defendant-employer and the employer subsequently approved the plaintiff's request to transfer to another job assignment; thus, the court concluded that the letter did not affect the plaintiff's pay, benefits, or employment status.   *See id.*   Although the disciplinary letter warned that future disciplinary action was possible if the plaintiff continued to engage in the same conduct, the *Tapia* court concluded that this warning was not enough to transform the letter into disciplinary action.   *See id.*

As in the foregoing cases, the Court concludes that Plaintiff's April 21, 2011, written reprimand did not affect her pay, benefits, or employment status, and that it therefore did not constitute an adverse employment action.   Although Plaintiff's reprimand, like the reprimand in *Rennard*, was part of a progressive disciplinary process and expressly stated that Plaintiff could be

suspended or terminated if the complained-of behavior continued, Defendants did not take any further action against Plaintiff in connection with the reprimand.  *Cf. Rennard*, 2004 WL 1260309, at *10.   To the contrary, Defendants renewed Plaintiff's contract the following year. In *Rennard*, the court explained that because the employer did not further act against the plaintiff, the employer's action did not cause any immediate or practical adverse effect on the plaintiff's job status.  *See id.*   The Court finds this reasoning persuasive.   The Court likewise is persuaded by the reasoning of *Tapia*, in which the Tenth Circuit concluded that the plaintiff had failed to establish that the reprimand adversely affected the plaintiff's job status because the plaintiff continued to work for the employer, even though the reprimand warned the plaintiff that further discipline would be possible if the complained-of conduct continued.  *See Tapia*, 2006 WL 308267, at *4.   For the foregoing reasons, the Court concludes that Plaintiff has suffered no immediate or practical adverse effect on her job and that Plaintiff therefore has not satisfied her prima facie burden of establishing that an adverse employment action occurred.  *See id.*; *see also Medina*, 413 F.3d at 1137 (holding that a warning letter could not be found to adversely affect the terms of the plaintiff's employment because the letter was not placed in the plaintiff's personnel file and because the plaintiff failed to demonstrate that any future employer could discover the letter); *Anderson v. Clovis Mun. Schs.*, No. 07-2160, 2008 WL 410435, *4 (10th Cir. 2008) ("[the plaintiff's] reprimand served as a warning that he faced consequences if he did not improve his classroom management skills," but because the reprimand did not serve as a demotion, alter his pay, or change his responsibilities in a significant manner, it did not constitute an adverse employment action).

          The Court is not persuaded to hold otherwise by the fact that Defendant Diehl issued a second reprimand to Plaintiff on November 5, 2012.   This reprimand indicates that it was issued

14

not in connection with Plaintiff's April 2011 reprimand but rather more than one and one-half years later on an unrelated matter involving Plaintiff's failure to attend five required meetings. Thus, Plaintiff still has failed to present any evidence that her April 2011 reprimand had a tangible adverse impact on her pay, benefits, or employment status.   Court therefore continues to be persuaded by the reasoning of *Rennard* and *Tapia*.   *See supra* pp. 12-14; *see also Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) (holding that multiple oral and written reprimands received by employee pursuant to employer's progressive disciplinary process did not implicate sufficiently tangible job consequences to constitute an independent basis for liability under Title VII, notwithstanding that each reprimand brought employee closer to termination, because there was no evidence of any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities); *Weeks v. New York State*, 273 F.3d 76, 86 (2d Cir. 2001) (holding that an employee who received both a "notice of discipline" and a "counseling memo" did not suffer an adverse employment action where employee did not allege any facts showing a materially adverse change in her working conditions).

    Nor is the Court persuaded by Plaintiff's citation to *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998).   The facts in *Roberts* are distinguishable from those here. Although as here, the record in *Roberts* indicated that the more warnings the plaintiff received, the more likely he would be terminated, unlike here the plaintiff in *Roberts* received twenty warning letters, two suspensions, and a termination.   *See id.* at 1104.   Thus, it is clear that the employment actions at issue in *Roberts* adversely affected the terms and conditions of the plaintiff's employment.   Indeed, the *Roberts* plaintiff was in fact terminated.   Here, in contrast, Plaintiff received two written warnings that did not alter the terms and conditions her employment:

Plaintiff was not demoted, her responsibilities were not significantly altered, her pay was not changed, and her contract was renewed for the 2012-2013 school year.   Thus, the facts on the record here are analogous to the facts in *Rennard* and *Tapia* and are distinguishable from those in *Roberts*.   *Cf. Dick v. Phone Directories Co.*, 265 F. Supp. 2d 1274, 1288-89 (D. Utah 2003) (distinguishing *Roberts* based upon fact that there were twenty written reprimands as well as two suspensions and a termination, and holding that the write-up at issue in *Dick*, although a disciplinary action, did not constitute an adverse employment action because it in no way affected the terms and conditions of the plaintiff's employment), *rev'd in part on other grounds*, 397 F.3d 1256 (10th Cir. 2005).

Plaintiff also argues that her April 2011 written reprimand constitutes an adverse employment action because future employers will be deterred from hiring her as a result of the reprimand.   The Tenth Circuit has explained that adverse actions encompass those acts that carry a "'significant risk of humiliation, damage to reputation, and a concomitant harm to *future employment prospects*.'"   *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032 (10th Cir. 2004) (quoting *Berry*, 74 F.3d 986).   "[H]arm to future employment prospects" includes a negative job reference, and therefore such a reference can constitute an adverse employment action.   *See id.* at 1035.

In *Hillig v. Rumsfeld*, the Tenth Circuit held that a Title VII plaintiff whose former employer gave negative references to a prospective employer did not have to prove that she would have received the prospective job but for the negative references to establish that the references constituted an adverse employment action.   *See* 381 F.3d at 1029.   Rather, the *Hillig* court only required the plaintiff to show that the negative references would have "a likely effect on future job opportunities."   *Id.*   Although the court specifically excluded from the definition of "adverse employment actions," those "acts that merely have a *de minimus* impact upon an employee's

16

future job opportunities," the court found sufficient evidence of more than *de minimus* harm to the employee because "the negative references were very unfavorable," and therefore carried a significant risk of harm to her future employment prospects.   *See id.* at 1033, 1035.

Plaintiff contends that her April 21, 2011, written reprimand constitutes an adverse employment action akin to that in *Hillig* because the reprimand will be disclosed to future employers and therefore harm her employment prospects.   This case, however, is distinguishable from *Hillig* because there is no evidence in the record here that Defendants gave Plaintiff a negative reference.   Indeed, the record indicates that Plaintiff is still employed by the District and that she has not even attempted to apply for employment elsewhere.

Furthermore, Defendants have produced evidence that the District does not provide information regarding an employee's personnel file to future employers.   Thus, Defendants maintain that Plaintiff has no basis to argue that her written reprimand will have a direct effect or otherwise significantly harm her future employment prospects.   In support of this argument, Defendants point to the affidavit of Human Resources Director Serrano, in which Ms. Serrano attests that the District does not disclose materials in the employee's personnel file and that a written reprimand is "never" shared with a potential employer.   Rather, the District only provides information regarding "the employee's qualities and traits, which includes teacher evaluations." Ms. Serrano indicates that Plaintiff has good evaluations and a good rapport with the children and that "[t]his is the extent of the information that would be shared about [Plaintiff]."

Plaintiff nonetheless argues that the District has adopted policies that would require disclosure of the facts surrounding the disciplinary action.   Specifically, Board Policy G-1790 provides "that under current New Mexico law, an employer and individual employees may be held liable for having provided incomplete or misleading employment references or recommendations

17

in regard to the employer's current or former employees under certain circumstances."   The

policy further provides that "the Superintendent shall ensure that [a] recommendation fairly

reflects all relevant and reliable information bearing upon the former employee's competency,

turpitude, and proper performance of duties."

      Defendants argue, and the Court agrees, that Plaintiff's showing of harm is speculative and

does not rise to the level of demonstrating a direct or likely effect on her future prospects.   *See,*

*e.g.*, *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) (holding that the denial of a

university affiliation that the plaintiff alleged was necessary to support a career as a private scholar

was speculative and did not constitute an adverse employment action because the plaintiff offered

no expert testimony or evidence that academics denied tenure had been able to remake themselves

as private scholars); *see also Trimmer v. United States Dep't of Labor*, 174 F.3d 1098, 1103-04

(10th Cir. 1999) (holding that an employer's ten-month delay in initiating an alternate placement

process was too speculative to constitute an adverse employment action because the employer's

delay did not foreclose employee's ability to initiate the placement process or a job search

himself).   Plaintiff's sole evidence to dispute the Serrano affidavit is Board Policy G-1790, which

indicates that the Superintendent has an independent obligation to ensure that a recommendation

"fairly reflects all relevant . . . information bearing upon . . . turpitude[] and proper performance of

duties."   Plaintiff speculates that in fulfilling this obligation, the Superintendent will consider the

facts surrounding her written reprimand to be relevant to "turpitude" and will be obliged to

disclose this information.

      If the Court were to accept Plaintiff's theory, the Court would have to speculate that

Plaintiff's future job prospects would be harmed *if* Plaintiff were to decide to terminate her

employment with the District and seek alternative employment, *if* a prospective employer were to

request a recommendation from the District, *if* the Superintendent were to decide that the fact surrounding Plaintiff's written reprimand are relevant to her turpitude, and *if* the Superintendent were to disclose information that was negative about Plaintiff to a prospective employer in contravention of Defendants' representation that the information will not be shared.   This type of speculation does not constitute a "*likely* effect on future job opportunities" within the meaning of *Hillig*, 381 F.3d at 1029 (emphasis added), or otherwise transform Plaintiff's written reprimand into an adverse employment action.   *Cf. Kennedy v. Gen. Motors Corp.*, 226 F. Supp. 2d 1257, 1267 (D. Kan. 2002) (holding alleged harm to the plaintiff's employment status was speculative because the plaintiff did not actually sustain the harm but rather theorized only that there was the potential that the plaintiff, one day, might sustain the alleged harm).

Likewise, Plaintiff's evidence that Defendant Diehl's wife might inform the Farmington District of Plaintiff's written reprimand is not sufficiently concrete to establish the requisite harm to Plaintiff's future employment prospects.   Plaintiff argues that the next closest school district in which Plaintiff would seek employment is the Farmington Public School District, and that it would be reasonable for the Farmington District to ask Ms. Diehl to give a recommendation of Plaintiff given that Plaintiff works with Ms. Diehl's husband.   Plaintiff further presumes that Ms. Diehl would disclose the facts surrounding her reprimand.   This theory is sheer speculation and does not establish a clear, direct, or significant risk to Plaintiff's future employment opportunities.   *See id.*

For the foregoing reasons, the Court concludes that Plaintiff has not pointed to evidence sufficient to establish that her April 2011 written reprimand constituted an adverse employment action.   The potential that the written reprimand could adversely affect Plaintiff's employment at some unknown time in the future is not enough to support a claim under Title VII.   On the record before it, Court therefore concludes that Plaintiff has not met her summary judgment burden of

19

establishing a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting

framework.[6]   Thus, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's

Title VII discrimination claims based upon race and sex.

       B.      <u>Title VII Retaliation Claim</u>

In addition to prohibiting discrimination and harassment, Title VII contains an

anti-retaliation provision that forbids an employer from penalizing an individual because she has

"opposed any practice made an unlawful employment practice" by Title VII or because she has

"made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing" pursuant to Title VII.   42 U.S.C. § 2000e-3(a).   A plaintiff bringing a retaliation

claim must establish that retaliation played a part in a materially adverse employment action and

may choose to satisfy this burden by indirect evidence under the *McDonnell Douglas*

burden-shifting framework.   *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224-25 (10th Cir.

2008).

To establish a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must

demonstrate "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable

employee would have found the challenged action materially adverse, and (3) that a causal

connection existed between the protected activity and the materially adverse action." *Pinkerton*

---

[6]   Plaintiff also has failed to point to evidence indicating that Defendants' actions created a
significant risk of humiliation sufficient to constitute an adverse employment action.   *Cf. Hillig*,
381 F.3d at 1032 (adverse actions encompass "those acts that carry a 'significant risk of
humiliation[ and] damage to reputation'") (quoting *Berry*, 74 F.3d at 986).   Plaintiff's evidence
indicates that Defendant Diehl informed the athletic director that Diehl was suspending Plaintiff
before Diehl informed Plaintiff of her suspension.   Plaintiff maintains that the disclosure of her
suspension and the investigation before it started caused Plaintiff embarrassment and humiliation.
*See* Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., p. 11.   The Court concludes, however, that the mere
fact that Defendant Diehl informed the athletic director of Plaintiff's administrative suspension
prior to informing Plaintiff of that suspension is not sufficient as a matter of law to transform
Plaintiff's written reprimand into an adverse employment action.

*v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009) (citations omitted).   If a plaintiff

can establish a prima facie case of retaliation, the burden shifts to the defendant to show a

legitimate non-discriminatory reason for the adverse employment action.   *See Twigg v. Hawker*

*Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).   If the defendant meets this burden, the

burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is

pretext.   *Id.*

It is undisputed that Plaintiff has satisfied the first element of her prima facie case by

demonstrating that she engaged in protected activities when she filed her complaint with the

EEOC on June 15, 2011, and when she filed her Complaint in this case on December 27, 2011.

The parties do dispute, however, whether Plaintiff has satisfied the remaining two elements of her

prima facie case and whether Defendants have articulated a legitimate non-discriminatory reason

for their employment actions.

The Court first addresses whether Plaintiff has satisfied the second element of her prima

facie case by demonstrating that Defendants' challenged employment actions were materially

adverse.   Plaintiff's retaliation claim is premised on two alleged adverse actions:   (1) Defendant

Rasor's February 10, 2012, notification that he was declining to allow Plaintiff's son to participate

in the academic bowl on the Blanco Elementary School team;[7]  and (2) Plaintiff's son having to be

moved in November 2011 from a school he was at for 6 years to another based on an illegal policy

enforced by the District.

---

[7]   As a threshold matter, Defendants argue that they are entitled to summary judgment in their
favor because Defendant Rasor "was not involved in the decision regarding Plaintiff's son's
participation on Blanco Elementary's Academic Bowl Team," and "[t]herefore, he could not have
retaliated against Plaintiff via her son."   Defs.' Mem. Supp. Defs.' Mot. Summ. J. [Doc. 44], p.
10.   Defendant Rasor's February 10, 2012, e-mail to Plaintiff indicating that he was declining to
allow Plaintiff's son to participate in the March 2012 academic bowl, however, negates
Defendants' claim that Superintendent Rasor was not involved in the decision-making process.

"Title VII protects individuals 'not from all retaliation' but only from retaliation 'that produces an injury or harm'" that itself rises "to a requisite 'level of seriousness.'"   *Williams v. W.D. Sports, Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).   To qualify under this standard, the Tenth Circuit has held that "[a] challenged employment action is adverse for the purposes of a claim for retaliation under Title VII if a reasonable employee would have found it materially adverse."   *McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006).   Stated differently, an action is materially adverse if it would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See id.*   The materiality of a claimed adverse action is to be determined objectively.   *See id.* (citing *White*, 126 S. Ct. at 2415).   "[W]hile th[is] standard is sensitive to the particular circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances."   *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009).   "'[P]etty slights, minor annoyances, and simple lack of good manners' will not deter 'a reasonable worker from making or supporting a charge of discrimination.'"   *McGowan*, 472 F.3d at 742 (quoting *White*, 126 S. Ct. at 2415).

The nature of the second element was the subject of Supreme Court review in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).   Before *White,* some circuits held that a claim for retaliation lies only when the employer effects an adverse action within the workplace.   *See Williams*, 497 F.3d at 1086-87 (citing *White*, 126 S. Ct. at 2410).   That is, the employee needed not only to suffer a materially adverse action, but the consequence of that action had to come in the employment context itself, in the form of a termination, demotion, or the like. *See id.* at 1087.   By contrast, other circuits allowed claims to proceed when the employer's adverse action had consequences befalling the plaintiff outside the employment environment.   *See*

*id.* (citing *White*, 126 S. Ct. at 2410-11).   In *White*, seeking to resolve this circuit split, the Supreme Court sided with the latter school of thought, recognizing that "[a]n employer can effectively retaliate against an employee" for exercising his or her protected rights "by taking actions not directly related to his [or her] employment or by causing him [or her] harm *outside* the workplace."   *White*, 548 U.S. at 64; *see Williams*, 497 F.3d at 1087.

Since the Supreme Court decided *White*, the Tenth Circuit further has explored the type of harm that is sufficiently material to implicate a Title VII claim.   In *Williams*, the Tenth Circuit held that the plaintiff in the aggregate alleged acts sufficient to meet the materiality standard.   497 F.3d at 1090-91.   The record in *Williams* revealed that the employer warned the plaintiff that she should not "fight" him, and that if she did so rumors about her sexual conduct would be made public without regard to their veracity; that he would seek to ruin her marriage; and that she should consider the repercussions of her actions on her family.   *Id.* at 1090.   The employer then allegedly proceeded to make good on these threats, opposing the plaintiff's unemployment benefits claim in a submission alleging that the firm had fired the plaintiff for sexual misconduct, an apparent falsity given the employer's candid admission at trial that he did not fire the plaintiff for such behavior.   *Id.*   The company then offered to drop its opposition to the plaintiff's unemployment benefits claim if the plaintiff dropped her discrimination claims.   *Id.*

In analyzing the harm presented by the plaintiff, the *Williams* court cautioned that not every inconvenience an employee is made to endure can be actionable retaliation.   *Id.* at 1091 n.8.  The *Williams* court explained, however, that the plaintiff had evidence that in the aggregate far exceeded what any reasonable employee would discard as merely inconvenient.   *Id.*   The Tenth Circuit thus held that "a reasonable employee could well find such a *combination of threats and actions* taken with the design of imposing both economic and psychological harm sufficient to

23

dissuade the employee from making or supporting a charge of discrimination."   *Id.* at 1090
(emphasis added).

On the other hand, in *Wheeler v. BNSF Railway Co*., the Tenth Circuit rejected the
plaintiff's argument that she suffered a materially adverse action when her employer failed to
transfer her from Lincoln to Topeka.   No. 10–3155, 2011 WL 1226935, *10 (10th Cir. Apr. 4,
2011).   The *Wheeler* court concluded that there was no evidence in the record from which a jury
could reasonably find that a painter position in Topeka was objectively more desirable or
advantageous than a painter position in Lincoln.   *Id*.   Instead, the record indicated only that the
plaintiff desired to transfer back to Topeka for subjective reasons.   *Id.*   The *Wheeler* court also
held that a jury could not reasonably conclude that the employer's failure to provide keys to the
Topeka facility or a personal vehicle to use there were "materially adverse" because, although they
may have inconvenienced the plaintiff, they would not have deterred a reasonable employee from
making a charge of discrimination.   *Id.* (citing *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455,
461 (7th Cir. 2007) (rejecting similar claim by plaintiff that employer refused to provide him with
use of a state vehicle)).

With respect to the alleged retaliation involving Defendant Rasor's refusal to allow
Plaintiff's son to participate on the Blanco academic bowl team, the Court concludes that Plaintiff
has failed to meet her prima facie burden of establishing a materially adverse action.   The facts in
this case are akin to those in *Wheeler* and distinguishable from those in *Williams*.   The record
indicates that Defendant Diehl denied Plaintiff's request to allow her son to compete on the Blanco
academic bowl team after Plaintiff's son transferred from Blanco to Mesa Alta.   Plaintiff argues
that this denial was material, that it constituted real harm because her son needed the competition
to further his education because he was on an IEP for gifted and talented students, that her son

24

suffered embarrassment by not being allowed to attend the competition with his peers, and that this harm would dissuade a reasonable worker from making a claim of discrimination.

The Court concludes that Plaintiff's showing does not meet the prescribed materiality standard.   Plaintiff's son had the option of joining an academic extracurricular team at a new school.   Moreover, he presently competes on the academic bowl team at Mesa Alta.   As in *Wheeler*, there is no evidence in the record that the academic bowl team at Blanco Elementary was objectively more desirable or advantageous than the academic bowl team (or any other academic extracurricular activity) at Mesa Alta or elsewhere.   Thus, Plaintiff's reasons for preferring the Blanco team appear to be purely subjective.   The Supreme Court and Tenth Circuit have determined that the materiality of a claimed adverse action is to be determined objectively and that the inquiry does not turn on a plaintiff's personal feelings.   *See White*, 548 U.S. at 68; *McGowan*, 472 F.3d at 742; *Semsroth*, 555 F.3d at 1184.   That Plaintiff views the harm as material matters not for purposes of the Title VII inquiry.   The materiality standard is an objective one.   *See McGowan*, 472 F.3d at 742.   Under this standard, a reasonable worker would not be dissuaded from making or supporting a charge of discrimination.   Thus, because Plaintiff has not established her prima facie case, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim based upon the denial of her son's right to participate on the Blanco academic bowl team.

With respect to the alleged retaliation involving the transfer of Plaintiff's son to another school within the District, Defendants argue, and the Court agrees, that Plaintiff voluntarily chose to transfer her son.   Plaintiff has indicated that she believed that the school's requirement that all sixth grade students complete a summer homework packet or receive a failing grade violated her son's IEP for gifted and talented children because he did not need remedial services.   When

Plaintiff complained about the mandatory summer assignment, school administrators advised

Plaintiff that if she did not agree with the policy she could transfer her son to another school.

Although Plaintiff contends that her son "had to be moved" because of the policy, it was Plaintiff

alone who chose to make the decision to transfer her son.   Thus, any adverse action is attributable

to Plaintiff and not to Defendants.   Plaintiff therefore has not satisfied her prima facie burden of

establishing that *Defendants* engaged in an employment action with respect to her son's November

2011 transfer to another school.   For this reason, Defendants' Motion for Summary Judgment

with respect to the transfer is granted and Plaintiff's Motion for Summary Judgment on this issue is

denied.[8]

      B.      <u>Fifth Amendment Due Process Claim</u>

      Plaintiff argues that Board Policies for which she was punished are unconstitutionally

vague in violation of the Fifth Amendment to the U.S. Constitution because they do not limit or

sufficiently explain what offenses are punishable.   The void for vagueness doctrine addresses at

least two connected but discrete due process concerns:   (1) that regulated parties should know

what is required of them so that they may act accordingly; and (2) that the law is sufficiently

precise so that enforcement is not arbitrary or discriminatory.   *See Grayned v. City of Rockford*,

408 U.S. 104, 108-09 (1972).   Plaintiff contends that Board Policy G-0850 is vague because it

does not sufficiently explain when and where offenses are punishable, including whether offenses

are punishable only during contract hours or whether they are punishable 24 hours a day, and

whether offenses are punishable only on school grounds or whether they are punishable off of

---

[8]   Because the Court grants Defendants' Motion for Summary Judgment on Plaintiff's Title VII
retaliation claim on the ground that Plaintiff has failed to satisfy the second element of her prima
facie case, the Court need not consider whether Plaintiff has satisfied the third element of her
prima facie case or whether Defendants have articulated a legitimate, non-discriminatory reason
for their adverse action.

school grounds and at students' homes.[9]   *See* Pl's Mem. Supp. Mot. Summ. J. [Doc. 61], p. 3.

Plaintiff points out that Board Policy G-0850 requires employees to exercise general supervision

over the conduct of students not only while in school but also before and after school.   Plaintiff

argues that the way the policy reads "teachers are responsible for [supervising] students even when

they are at home which is ridiculous."   Pl's Mem. Opp'n Defs.' Mot. Summ. J., p. 19.   Plaintiff

also contends that Board Policy G-0850 is vague in terms of requiring teachers to follow specific

codes "at all times" when teachers are not paid for a 24-hour contract but rather only for their

contracted duty hours of 8:10 a.m. to 4:00 p.m.   *Id.*

   A rule may be unconstitutionally vague on its face when it either forbids or requires the

doing of an act in terms so vague that persons of common intelligence must necessarily guess at its

meaning and differ as to its application.   *See Flanagan v. Munger*, 890 F.2d 1557, 1569 (10th Cir.

1989).   Such a rule invites uneven and arbitrary enforcement.   *See City of Chicago v. Morales*,

527 U.S. 41, 56 (1999).   Although due process demands specificity, the Tenth Circuit has

recognized that schools also have a competing concern because of their need to impose

disciplinary sanctions for a wide range of unanticipated conduct disruptive of the education

process.   *See West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1368 (10th Cir.), *cert.*

*denied*, 531 U.S. 825 (2000).   Thus, the Tenth Circuit has determined that school disciplinary

rules need not be as detailed as a criminal code.   *See id.*

   Plaintiff contends that under these standards Policy G-0850 is unconstitutionally vague

---

[9]   Plaintiff does not appear to argue that the policies are vague because they do not adequately
specify the type of conduct prohibited.   Rather, Plaintiff limits her argument to the timing of and
venue for the conduct.   Nonetheless, Defendants contend, and the Court agrees, that if Plaintiff
were challenging the type of conduct proscribed, that calling students in her seventh period class
"lame," "disrespectful," "lazy," and "subhuman" on Facebook knowing that other students and
district parents could see her comments, does not accord those students with dignity or respect and
in fact is embarrassing them unnecessarily.

because a person of common intelligence would have no way of knowing that it regulated conduct outside of contract hours.   The Court disagrees.   Board Policy G-0850, which indicates that "[a]t all times" teachers must accord students the respect they deserve and avoid embarrassing any student unnecessarily, unequivocally provides when it is applicable.   The language "at all times" is sufficiently clear that a person of common intelligence would understand that the requirement of respecting students and avoiding any unnecessary embarrassment applies 24 hours a day. Although a different provision of Board Policy G-0850 also provides that "[e]mployees are expected to exercise general supervision over the conduct of students, not only while in the schoolroom, but also before and after school and during recess," and this language implies that teachers must exercise general supervision over students at their homes, this implication does not render the language "at all times" or "before and after school" vague or incomprehensible to a person of ordinary intelligence.   Thus, Plaintiff's argument does not have merit.   *Cf. Flanagan*, 890 F.2d at 1569; *see also West*, 206 F.3d at 1368.

Moreover, simply because Plaintiff disagrees with the scope of the policies in that they purport to govern the conduct of teachers beyond their contracted work day does not render the policies unsound for constitutional purposes.   Plaintiff does not argue that she fails to understand the meaning of the policies but rather contends that it is unreasonable for the policies to apply 24 hours a day when her contracted hours are between 8:10 a.m. and 4:00 p.m.   Plaintiff also argues that application of the policies "at all times" violates the provision in Board Policy G-0650 requiring teachers to "demonstrate integrity . . . *in the school setting*."   The Constitutional standard for determining whether a void for vagueness due process violation has occurred does not turn on whether an employee disagrees with substance of a policy, whether the policy provision breaches a private contract, or whether the policy violates another provision in the local school

28

board policy.   Rather, the constitutional standard defines a rule as unreasonably vague when it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.   *See Flanagan*, 890 F.2d at 1569.   The Court has determined that the aforementioned policies are sufficiently specific to meet this standard.   Thus, Plaintiff's arguments have no merit.[10]

Although Plaintiff's written reprimand withstands scrutiny under the void for vagueness doctrine with respect to the foregoing policy provisions, Plaintiff additionally argues that the policy provision stating that "all personnel employed by the district are expected to relate to students of the District in a manner that maintains social and moral patterns of behavior consistent with community standards and acceptable professional conduct" is vague and overbroad.   The Court need not address this argument, however, because the Court already has determined that Plaintiff's written reprimand is based upon the sufficiently specific policy requirements that employees must at all times accord students the respect they deserve and at all times must avoid embarrassing any student unnecessarily.   The Court, however, nonetheless concludes that this policy, which is tied to "community standards," is sufficiently specific such that persons of common intelligence would understand it.   *Cf. id.*; *West*, 206 F.3d at1368.   "Community

---

[10]   Plaintiff also maintains that the directives contained in her written reprimand are vague because their scope exceeds Plaintiff's contract hours.   Plaintiff's written reprimand provides that Plaintiff must treat all students and parents with respect, model professionalism, and adhere to the code of conduct and statement of ethics.   The Court has explained that the constitutional analysis does not turn on the violation of any private contract provision.   Moreover, the Court likewise has held that the requirement that an employee "at all times" accord students with respect and dignity is not vague.   For these same reasons, the Court also concludes that Plaintiff's vagueness argument fails with respect to the directives contained in her written reprimand.

Furthermore, the Court is unpersuaded by Plaintiff's argument that the reprimand threatened to restrain her from filing charges of discrimination.   The reprimand only warns Plaintiff that "retaliation" by Plaintiff against others will not be tolerated and does not prohibit Plaintiff from filing a lawsuit based upon discrimination or retaliation by others against her.

standards" implicates a contextual inquiry under which one looks to the relevant community for the definition of acceptable behavior.  *See Hydro Res., Inc. v. E.P.A.*, 608 F.3d 1131, 1171 (10th Cir. 2010) ("Other areas of the law that draw upon the notion of a community show that community means context.   For example, the obscenity standard developed by the Supreme Court in the First Amendment arena requires the trier of fact to apply 'contemporary community standards,' a contextual inquiry that may produce different outcomes depending upon the community in which the test is applied.").   Statutory language such as this has been upheld in other areas of the law and the Court likewise concludes that it is sufficiently clear here to survive Plaintiff's due process challenge.  *Cf. M.S. News Co. v. Casado*, 721 F.2d 1281, 1286-87 (10th Cir. 1983) (rejecting argument that the use of the First Amendment *Miller* obscenity standard rendered the ordinance overbroad or vague).

Plaintiff further contends that the Board Policies are unpublished and that ordinary persons therefore would not have notice of them.   A rule may be unconstitutionally vague because it does not provide adequate notice to the public.  *See Morales*, 527 U.S. at 56; *Isler v. N.M. Activities Ass'n*, No. 10-00009 MV/WPL, 2010 WL 8522978, *10 (D.N.M. Feb. 19, 2010).   Plaintiff claims that she did not have notice of the Board Policies because she was not informed of the policies at the time of her hire and that she was not aware of them until after she received her written reprimand.   Defendants point out that the policies were readily available on the District's website at the time Plaintiff made her Facebook comments, and that they were available online since at least April 8, 2008.   Accordingly, Defendants maintain notice was constitutionally sound.

Plaintiff cites no case law or other authority pursuant to which the Court might hold that posting policies on an employer's website is insufficient to constitute adequate notice to an employee.  *See* D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in

support of the legal positions advanced.").    Thus, the Court need not consider Plaintiff's argument

regarding her lack of actual notice of the Board Policies prior to her disciplinary action.

      Even if Plaintiff had properly supported her argument, the Court nonetheless would

conclude that the Board Policies were available on the District's website at the time of Plaintiff's

Facebook posting and that this notice was constitutionally sufficient.    Moreover, the Court

concludes that Plaintiff was on fair notice—if not actual notice—of the Board Policies because a

reasonable person would have known that conduct such as Plaintiff's was blameworthy and at risk

of violating a school board's policies.    *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)

(noting that objections to vagueness under the Due Process Clause rest on lack of notice and may

be overcome in any specific case where reasonable persons would know their conduct is at risk).

Specifically, a reasonable employee would have been on notice to inquire about the existence of

employment policies and, if interested, would have inquired as to their content and availability.

Indeed, employment policies or an employee handbook are par for the course in most employment

settings and certainly are to be expected in the public school setting.    Furthermore, a reasonable

employee would have been on fair notice that embarrassing a student unnecessarily on a social

networking site seen by other students and District parents, referring to students as "lame," "lazy,"

or "subhuman" on that social networking site, and encouraging a student to disrespect a District

parent on that site would constitute blameworthy conduct.    *Cf. Rooms v. S.E.C.*, 444 F.3d 1208,

1214 (10th Cir. 2006) (holding that plaintiff was on fair notice that his conduct was contrary to the

rules and that due process was not violated where plaintiff claimed he did not have notice of rules

violation prior to being sanctioned, because plaintiff had been a registered representative in the

securities industry for years and therefore should have known that his conduct was not ethical or

accepted in the securities industry); *Carter v. SEC*, 726 F.2d 472, 473-74 (9th Cir. 1983) (rejecting

as inadequate defense that registered representative charged with National Association of

Securities Dealers (NASD) rules violation did not know sales violated NASD rules; registered

representative is assumed to have knowledge of rules), *cited in Rooms*, 444 F.3d at 1214; *cf.*

*Lambert v. California*, 355 U.S. 225, 228 (1957) (explaining that due process's notice requirement

may be violated where "circumstances [that] might move one to inquire as to the necessity of

[behaving consistent with the policy or law] are completely lacking" and holding that the statute at

issue did not provide adequate notice because the statute would not put an average person in the

community on notice that the conduct would be blameworthy).   Thus, for the foregoing reasons

the Court concludes that Plaintiff had adequate notice of the Board Policies proscribing her

conduct and that due process therefore was not violated.

Plaintiff also maintains that Defendants punished her for violating a non-existent social

networking policy.   Plaintiff's implicit argument is that her punishment violated the Fifth

Amendment because an ordinary person would not have notice of a policy that did not exist.   The

record, however, reveals that Defendants did not punish Plaintiff for violating a non-existent social

networking policy.   The written reprimand itself clearly and unequivocally indicates that

Defendants punished Plaintiff for violating Board Policies G-0650 and G-0850.   Plaintiff's

argument, therefore, is unpersuasive.[11]

---

[11]   To the extent Plaintiff also argues that her reprimand violates the Fifth Amendment because it
was based on the general Board Policies G-0650 and G-0850 instead of a more specific social
networking policy, the Court concludes that this argument does not have merit.   The Court
already has determined that Board Policies G-0650 and G-0850 are sufficiently concrete to
withstand scrutiny under the void for vagueness doctrine.   The Court rejects Plaintiff's invitation
to heighten the specificity requirements of the Fifth Amendment, for such a reading of the Fifth
Amendment would place too great a burden on employers.   Indeed, under Plaintiff's reasoning,
Defendants could not find an employee who embarrassed a student on a field trip or at one of the
school's sporting events in violation of Board Policy G-0850 prohibiting teachers from
embarrassing students unnecessarily unless the Board also had a more specific policy governing

Finally, Plaintiff argues that she did not mean to harm students by her Facebook comments, that she was trying to diffuse the situation by using humor, that Defendants failed to identify the complaining parent, and that the comments were not sufficiently serious to warrant the removal of a student from Plaintiff's classroom.   Plaintiff's subjective intentions, however, are not relevant to the constitutional question whether the policies for which she was reprimanded are void for vagueness under the Fifth Amendment.   Likewise, the corroborating facts that support a violation of a policy or the resulting consequences of the violation of the policy are not relevant to the constitutional inquiry.   Plaintiff's arguments, therefore, are without merit.

The Court concludes that the Board Policies withstand due process scrutiny under the void for vagueness doctrine and that Defendants are entitled to judgment in their favor as a matter of law on Plaintiff's Fifth Amendment claim.   For the same reasons, Plaintiff's motion for summary judgment on the Fifth Amendment claim is denied.

II.     Defendants' Motion in Limine

Plaintiff's Amended Complaint states four causes of action:   (1) Count I alleges violation of Plaintiff's Fifth Amendment due process rights; (2) Count II alleges violation of Plaintiff's First Amendment right to freedom of speech as well as a human rights violation; (3) Count III alleges discrimination based upon race and sex in violation of Title VII; and (4) Count IV alleges retaliation in violation of Title VII.   Pursuant to an Order issued on September 13, 2012, the Court dismissed Count II of the Amended Complaint, and by virtue of this Memorandum Opinion and Order, the Court dismisses Counts I, III, and IV of the First Amended Complaint.   Because Plaintiff's Amended Complaint has been dismissed in its entirety, Defendants Motion in Limine to Exclude Certain Testimony by Witnesses Proffered by Plaintiff is moot.

conduct during field trips or extracurricular activities.

**CONCLUSION**

For the foregoing reasons, IT THEREFORE IS ORDERED that Defendants Bloomfield

Public School District, Superintendent Joe Rasor, and Principal of Bloomfield High School Cody

Diehl's Motion for Summary Judgment on Counts I, III, and VI[12] of Plaintiff's First Amended

Complaint [Doc. 43] is GRANTED, Plaintiff Varissa P. DeHoyos's Motion for Summary

Judgment on Counts I, III and IV of Plaintiff's First Amended Complaint [Doc. 60] is DENIED,

and Defendants' Motion in Limine to Exclude Certain Testimony by Witnesses Proffered by

Plaintiff [Doc. 42] is DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[12]   *See supra* note 1.